# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| PETRA PELAYO, | Case No. 08-CV-2030 IEG (POR) |
|---|---|
| Plaintiff, | **ORDER:** |
| vs. | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT [Doc. No. 8];** |
| HOME CAPITAL FUNDING; YOUR MONEY STORE; EMC MORTGAGE CORPORATION; 2721 WARDLOW AVENUE, SAN DIEGO 92154 and all other claimants of whatsoever kind and character against real property commonly known; and DOES 1 through 100 inclusive, | **(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE [Doc. No. 9.]; and** |
| | **(3) GRANTING PLAINTIFF LEAVE TO AMEND** |
| Defendants. | |

Presently before the Court are Defendant EMC Mortgage Corporations' ("Defendant" or "EMC") motions to dismiss the complaint for failure to state a claim and to strike "improper prayers for damages" in the complaint. (Doc. Nos. 8 and 9.) For the reasons stated herein, the Court grants both motions in part, denies both motions in part, and grants Plaintiff leave to amend her complaint.

## BACKGROUND

I.  The Parties

Plaintiff Petra Pelayo ("Plaintiff") was the owner of the Property located at 2721 Wardlow

- 1 -                                                                                                  08cv2030

1 Avenue, in San Diego, California ("Property").  (Compl., ¶ 1.)  Defendant Home Capital Funding

2 ("Home Capital") originated the subject loan ("loan") to Plaintiff.  (Id., ¶ 2.)  Your Money Store

3 was the broker for the loan, and EMC was the loan servicer for Home Capital.  (Id., ¶ 3-4.)

II.     Factual and Procedural Background

On October 11, 2006, Plaintiff obtained a loan of $424,000 from Home Capital secured by a deed of trust against the Property.  Plaintiff alleges the negotiations and transactions in connection with the mortgage were conducted primarily in Spanish, yet all loan documents were written in English. (Compl. ¶¶ 37-37.)  The deed of trust identifies First American Title Company as the trustee, Home Capital as the lender and Mortgage Electronic Registration Systems Inc. ("MERS"), as a nominee for Home Capital and beneficiary under the deed of trust.  Aztec Foreclosure Corporation ("Aztec"), a non-party to this action, issued a Notice of Default and Election to Sell Under Deed of Trust that was recorded on June 26, 2008.  In a Substitution of Trustee recorded on August 19, 2008, MERS substituted Aztec as the new trustee under the deed. Aztec issued and recorded a Notice of Trustee's Sale of the Property on October 14, 2008.

Plaintiff brought the instant complaint on October 31, 2008.  (Doc. No. 1.)  EMC filed its motion to dismiss the complaint (Doc. No. 8) and its motion to strike "improper prayers for damages" from the complaint (Doc. No. 9) on December 31, 2009.  Plaintiff has filed oppositions to both motions, and EMC has filed reply briefs for both motions.  The Court finds the motions suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1).

**DISCUSSION**

I.     EMC'S Motion to Dismiss the Complaint

Plaintiff's Complaint sets forth six causes of action against EMC: (1) violation of  the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) violation of the Truth in Lending Act ("TILA,") 15 U.S.C. § 1601 *et seq.*; (3) violation of Cal. Civ. Code § 1632 *et seq.*; (4) negligent misrepresentation; (5) rescission under TILA; and (6) unjust enrichment.  EMC moves to dismiss the Complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

1     A.    Request for Judicial Notice

2     EMC has requested that the Court take judicial notice of several documents in support of its motion to dismiss. In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). Accordingly, a court may consider matters of public record on a motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for summary judgment." Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. Cal. 1986), *abrogated on other grounds* by Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 111 (1991).

    EMC asks the Court to take judicial notice of several documents recorded in the San Diego County Recorder's Office: (1) a deed of trust in favor of MERS recorded on October 20, 2006; (2) a Notice of Default and Election to Sell Under Deed of Trust by Aztec, recorded June 26, 2008; (3) a Substitution of Trustee substituting Aztec for original trustee First American Title Company, recorded October 14, 2008; and (4) a Notice of Trustee's Sale recorded October 14, 2008. The Court finds these documents appropriate for judicial notice under Fed. R. Evid. 201(b)(2).

    B.    Legal Standard

    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). To a void a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). "Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation omitted). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, (1983).

### C. Violation of RESPA

Plaintiff first alleges EMC violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, by failing to respond to her Qualified Written Requests ("QWRs") regarding the loan, and by failing to provide certain disclosures[1] at the loan's origination. (Compl., ¶¶ 26-30.) Plaintiff fails to identify the subsection(s) of § 2605 EMC allegedly violated.

Plaintiff's allegations with respect to EMC's "fail[ure] to adequately respond to [her QWRs]" appear to invoke 12 U.S.C. § 2605(e). RESPA defines a QWR as a:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that– [¶] (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [¶] (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (2009). When a loan servicer receives a QWR, it must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable. See 12 U.S.C. § 2605(e)(2).

Plaintiff alleges "Defendants YMS, HOME CAPITAL, EMC, and other defendants failed to adequately respond to [her QWRs] in violation of RESPA." (Compl., ¶ 28.) EMC argues Plaintiff has not alleged: (1) EMC mailed a written response acknowledging receipt of the written

---

[1] Plaintiff alleges "Defendants HOME CAPITAL, YMS, and other Defendants violated RESPA [12 U.S.C. § 2605] at the origination of the LOAN in various ways including but not limited to: a. no final settlement statement; b. no Notice of Right to Cancel; c. no TIL disclosure; d. no HUD or HUD 1; e. no Loan Applications or 1003; f. no affiliated business arrangement disclosure; g. no required provider disclosure." (Compl., ¶ 29.) Defendant does not address the legal sufficiency of this allegation, and the Court does not reach it here.

1 request; (2) she sent a QWR to EMC in particular; or (3) why the response to her QWR was
2 "inadequate."[2] (Motion at 5.) EMC also argues "Plaintiff fails to attach the purported QWR to the
3 Complaint." (Id.)[3]

4       Plaintiff's claim need not contain detailed factual allegations; it must only plead "enough
5 facts to state a claim to relief that is plausible on its face." Bell Atl., 550 U.S. at 570.  Moreover,
6 the complaint must only "give the defendant fair notice of what the [plaintiff's] claim is and the
7 grounds on which it rests." Id. at 555.  Accordingly, under notice pleading standards, Plaintiff's
8 RESPA claim does not fail because she failed to attach her QWRs to the complaint or because she
9 failed to allege the specific facts EMC identifies.  Compare Catalfamo v. Countrywide Home
10 Loan, 2008 U.S. Dist. LEXIS 84058, at *8 (E.D. Cal. Sept. 3, 2008) (finding the plaintiff's failure
11 to allege various factual details about his QWR was not fatal to his complaint, and stating "this
12 Court finds unavailing [defendant's] argument that [plaintiff's] failure to attach the QWR to the
13 complaint is fatal.")  The allegations give EMC "fair notice of what the [plaintiff's] claim is and
14 the grounds on which it rests." Bell Atl., 550 U.S. at 555.

15       EMC also contends Plaintiff has failed to allege pecuniary losses resulting from its alleged
16 failure to respond to her QWRs.  However, Plaintiff clearly asserts she suffered pecuniary damage
17 as a result of EMC's RESPA violation.  The complaint states under the RESPA cause of action
18 that, "as a proximate result of the negligent conduct of Defendants and their failures as herein
19 alleged, the Plaintiff has sustained damages, including monetary loss . . . ."  (Compl., ¶ 30.)[4]  The
20 Court rejects EMC's claim that Plaintiff has insufficiently pled damages under RESPA.

21       Finally, EMC argues Plaintiff may not allege she is entitled to statutory damages because

---

[2] EMC also argues in its reply brief that "RESPA's disclosure requirements provide no private right of action."  (Reply at 3.)  This argument is meritless, because Plaintiff brings her claim under 12 U.S.C. § 2605, which does provide a private right of action.  See 12 U.S.C. § 2605(f) (2009). ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . .").

[3] EMC's motion refers to a singular QWR, whereas the complaint alleges the existence of plural QWRs.  The Court further addresses the significance of this point *infra*.

[4] EMC argues "Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."  (Motion at 5, citing Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).)  The Court declines to reach the issue of whether an allegation of pecuniary damages is necessary to plead a claim under 12 U.S.C. § 2605.

1  she has not adequately pled EMC demonstrated a "pattern and practice" of failing to respond to
2  her "QWR." (Motion at 4-6.)  Specifically, EMC argues Plaintiff must allege she submitted more
3  than one QWR in order to be entitled to statutory damages. The damages provisions of § 2605
4  state:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: [¶] (1) Individuals. In the case of any action by an individual, an amount equal to the sum of– [¶] (A) any actual damages to the borrower as a result of the failure; and [¶] (B) any additional damages, as the court may allow, in the case of a *pattern or practice* of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000.

12 U.S.C. § 2605(f)(1) (2009) (emphasis added).  Plaintiff's complaint alleges EMC failed to respond to her qualified written *requests*. (Compl., ¶ 28) (emphasis added).  Although Plaintiff's request for damages is not artfully pled, its indication that Plaintiff submitted more than one QWR sets forth "enough fact to raise a reasonable expectation that discovery will reveal evidence" of a pattern or practice of noncompliance with the requirements of § 2605.  See Bell Atl., 550 U.S. at 555.  The Court declines to dismiss Plaintiff's claim for statutory damages under RESPA.

### D.   TILA Claims

Plaintiff also alleges EMC violated 15 U.S.C. § 1635(a) and Regulation Z (12 C.F.R. § 226.23) by failing to provide adequate notice of Plaintiff's right to cancel the loan transaction and failing to make other material disclosures at the time of the origination of the loan. (Compl., ¶¶ 33-34.)  Plaintiff also brings a claim for rescission of the loan.  (Compl., ¶¶ 44-48.)  Defendant argues it cannot be held liable for a TILA violation because it never had any ownership interest in the loan, and also argues Plaintiff's TILA damages claim is time-barred.  Finally, EMC argues Plaintiff's rescission claim is legally deficient.  The Court discusses each argument in turn.

#### 1.   EMC's Liability Under TILA

Civil liability under TILA applies to creditors.  See 15 U.S.C. § 1640(a) (2009) (establishing civil liability for "any creditor" for failure to comply with any requirement of "[15 USCS §§ 1631 *et seq.*], including any requirement under section 125 [15 USCS § 1635]."). 15 U.S.C. § 1641 provides that any TILA action (including a rescission claim) which may be brought against a creditor may also be brought against the assignee of a creditor.  However, under § 1641,

loan servicers "shall not be treated as an assignee of [a consumer] obligation for purposes of this section *unless the servicer is or was the owner of the obligation*." 15 U.S.C. § 1641(f) (2009) (emphasis added). See also Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175, at *4-5 (N.D. Cal. Feb. 6, 2008) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point.")

While the complaint clearly identifies EMC as the "Servicer" of the loan (Compl., ¶ 4), Plaintiff has also alleged EMC "purchased or otherwise acquired unknown rights and/or responsibilities relating to Plaintiff's LOAN from HOME CAPITAL at some date unknown to Plaintiff." (Compl., ¶ 21.) Construing the facts and all reasonable inferences from them in favor of Plaintiff, the Court finds it plausible (even if doubtful) that EMC was an assignee of the loan.[5] See Bell Atl., 550 U.S. at 555. Plaintiff has therefore sufficiently pled that EMC is subject to liability under TILA. Accord Cabalo v. EMC Mortg. Corp., 2009 U.S. Dist. LEXIS 8283, at *6 (N.D. Cal. Feb. 5, 2009) (finding plaintiff sufficiently pled defendant mortgage servicer was liable under TILA under circumstances where "it [was] not clear who the loan's holder [was]" and "documents submitted by defendants [did] not show [an assignment of the loan] was never made.")

### 2. Applicability of TILA Statute of Limitations

EMC also argues Plaintiff's claim for damages under TILA is time-barred. 15 U.S.C. § 1640(e) (2009) provides that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." Plaintiff executed the loan documents "on or about 10/11/2006," (Compl., ¶ 14; See also Ex. 1 to Motion), but Plaintiff did not bring suit until October 31, 2008. Plaintiff's claim for monetary damages would therefore be time-barred under the plain language of the statute.

Nevertheless, the Ninth Circuit has held that although the TILA statute of limitations

---

[5] EMC argues it has no recorded interest in the loan and "is not the lender, assignee, or beneficiary under the [deed of trust]." (Motion at 7.) Although the documents EMC submitted for judicial notice (Exs. 1-5 to Motion) suggest that EMC was not the original lender or an assignee of the loan, the documents do not conclusively establish that the loan was never assigned to EMC. The Court declines to find at this juncture that EMC never had any ownership interest in the loan.

1  generally begins to run at the consummation of the loan, the doctrine of equitable tolling may
2  suspend the limitations period "until the borrower discovers or had reasonable opportunity to
3  discover the fraud or nondisclosures that form the basis of the TILA action." King v. California,
4  784 F.2d 910, 915 (9th Cir. 1986). District courts have discretion to adjust the limitations period in
5  cases where "the general rule would be unjust or frustrate the purpose of [TILA]."[6] Id. The
6  general applicability of equitable tolling often depends on matters outside the pleadings, and "is
7  not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo v. United
8  States, 68 F.3d 1204, 1206 (9th Cir. Cal. 1995). See generally King, 784 F.2d at 915 (holding that
9  in the context of a TILA damages claim "fraudulent concealment and equitable tolling involve
10 factual determinations.")

11       In this case, Plaintiff argues the Court should equitably toll the statute of limitations
12 because she is a native Spanish speaker who negotiated the loan primarily in Spanish, but the loan
13 documents she received were written in English. Accordingly, it took Plaintiff longer to discover
14 any TILA violations in the English documents. When determining whether the statute of
15 limitations has run on a motion to dismiss, a court may only grant the motion "if the assertions of
16 the complaint, read with the required liberality, would not permit the plaintiff to prove that the
17 statute was tolled." Supermail Cargo, 68 F.3d at 1206. Reading the complaint liberally, the Court
18 finds applicability of equitable tolling in this case depends on factual questions not clearly
19 resolved in the pleadings; specifically, when Plaintiff had the "reasonable opportunity" to discover
20 the allegedly deficient disclosures. Accordingly, the Court finds plaintiff has sufficiently pled that
21 her TILA claim may be subject to equitable tolling, and denies EMC's motion to dismiss
22 Plaintiff's claim for damages under TILA.

23            3.    TILA Rescission Claim

24       Plaintiff also seeks to rescind her loan. (See Complaint, ¶¶ 44-48 and pp. 12-13.) EMC
25 argues Plaintiff has failed to state a claim for rescission under TILA because: (1) Plaintiff has not

---

[6] "Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit. . . The courts have construed TILA as a remedial statute, interpreting it liberally for the consumer." King, 784 F.2d at 915.

1  alleged she provided EMC with a notice of rescission; (2) Plaintiff's right to rescind has not yet
2  been decided in her favor; and (3) Plaintiff fails to offer tender in the complaint.
3        Under TILA, an obligor's right of rescission "expire[s] three years after the date of
4  consummation of the transaction or upon the sale of the property, whichever occurs first . . . ."  15
5  U.S.C. § 1635 (f) (2009).  To exercise the right to rescind, a borrower must "notify the creditor of
6  the rescission by mail, telegram or other means of written communication."  12 C.F.R. §
7  226.23(a)(2).  Notice is effective "when mailed, when filed for telegraphic transmission or, if sent
8  by other means, when delivered to the creditor's designated place of business."  Id.  Here, Plaintiff
9  has not alleged that she notified EMC of her desire to rescind the loan.  This failure is not fatal to
10 her rescission claim, however.  Although the Ninth Circuit has not reached the issue, "the
11 consensus is that 'the filing of a lawsuit can be sufficient written notice of rescission under TILA
12 so long as the complaint seeks rescission.'"  Toscano v. Ameriquest Mortg. Co., 2007 U.S. Dist.
13 LEXIS 81884, at *8 (E.D. Cal. Oct. 23, 2007) (quoting Jones v. Saxon Mortgage, 537 F.3d 320,
14 325-26 (4th Cir. 1998)).  In this case, Plaintiff entered into the loan agreement on October 11,
15 2006.  She requested rescission of the loan in her complaint, which she filed on October 31, 2008,
16 less than three years after consummating the loan.  The Court therefore declines to dismiss
17 Plaintiff's rescission claim based upon her failure to allege she provided a rescission notice to
18 EMC.
19       EMC next argues Plaintiff fails to state a rescission claim because the loan transaction is
20 not void until the Court has determined rescission is warranted.  EMC contends that "[n]othing in
21 TILA establishes that a borrower's 'mere assertion of the right to rescission has the automatic
22 effect of voiding the contract.'"  (Motion at 8, citing Yamamoto v. Bank of N.Y., 329 F.3d 1167,
23 1169 (9th Cir. 2003).)  This argument fails.
24       15 U.S.C. § 1635(b) provides for the following rescission-tender chronology under TILA:

> Within 20 days after receipt of a notice of rescission, the creditor
> shall return to the obligor any money or property given as earnest
> money, downpayment, or otherwise, and shall take any action
> necessary or appropriate to reflect the termination of any security
> interest created under the transaction. If the creditor has delivered
> any property to the obligor, the obligor may retain possession of it.
> Upon the performance of the creditor's obligations under this
> section, the obligor shall tender the property to the creditor, except

> that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

15 U.S.C. § 1635(b) (2009). In <u>Yamamoto</u> the Ninth Circuit held that a court may alter these procedures, <u>Yamamoto</u>, 329 F.3d at 1171, but did not hold that a rescission claim does not survive a motion to dismiss until a Court determines the right to rescind in Plaintiff's favor. <u>Accord</u> <u>Cabalo</u>, 2009 U.S. Dist. LEXIS 8283, at *12 (rejecting an identical argument).

EMC finally argues, relying on <u>Yamamoto</u>, that Plaintiff's rescission claim fails because Plaintiff failed to offer tender in the complaint of the funds she borrowed. However, in <u>Yamamoto</u> the Ninth Circuit affirmed a district court's dismissal of an action when debtors admitted an inability to tender, <u>Yamamoto</u>, 329 F.3d at 1171, and held a district court has discretion to alter the rescission-tender chronology. <u>Id.</u> The Court declines to exercise this discretion at this stage in the proceedings. The Court denies EMC's motion to dismiss Plaintiff's TILA rescission claim.

E.    Violation of Cal. Civ. Code § 1632 *et seq.*

Plaintiff also alleges EMC violated Cal. Civ. Code § 1632 *et seq.* because it failed to provide her with documents and disclosures in Spanish; her native language, and the language in which the parties allegedly negotiated the loan agreement. (Compl., ¶¶ 36-39.)

Defendant first argues § 1632 is inapplicable because the loan was secured by real property. This argument fails. Cal. Civ. Code § 1632(b) provides any person engaged in trade or business who negotiates primarily in the Spanish language, orally or in writing, in the course of entering into a loan agreement for primarily household purposes, subject to requirements of section 10240 of the California Business and Professions Code, shall deliver to the other party to the agreement prior to its execution, a Spanish-language translation of the agreement including a translation of every term and condition in the agreement. Cal. Civ. Code § 1632(b)(4) (2008). A loan is subject to the requirements of section 10240 if a real estate broker, within the meaning of Cal. Bus. & Prof. Code § 10131(d), has negotiated a loan secured by *real property*. Cal. Bus. & Prof. Code § 10240(a) (2008) (emphasis added). Cal. Civ. Code § 1632(b) therefore applies to loans secured by real property, under certain circumstances.

EMC next argues § 1632 is inapplicable because it is a loan servicer and not a real estate broker. For purposes of Cal. Bus. & Prof. Code § 10240 (and accordingly Cal. Civ. Code §

1  1632(b)(4)), a person is a real estate broker "if he or she solicits borrowers, or causes borrowers to
2  be solicited, through express or implied representations that the broker will act as an agent in
3  arranging a loan, but in fact makes the loan to the borrower from funds belonging to the broker."
4  Cal. Bus. & Prof. Code § 10240(b) (2008).  Plaintiff does not allege EMC acted as a real estate
5  broker, or allege facts supporting such a claim.  Cf. Gonzalez v. Ameriquest Mortg. Co., 2004 U.S.
6  Dist. LEXIS 22705, *25-26 (N.D. Cal. Mar. 1, 2004) (finding Plaintiff had alleged facts
7  supporting her claim that defendants acted as real estate brokers for purposes of §§ 1632 and
8  10240 and had sufficiently alleged other violations of those statutes as well).  Accordingly, the
9  Court dismisses Plaintiff's claim under Cal. Civ. Code § 1632 without prejudice.

10      F.    Negligent Misrepresentation

11      EMC argues Plaintiff's negligent misrepresentation claim fails because Plaintiff has not
12  alleged it made *any* representations to her, and because the claim does not meet the specificity
13  requirement of Fed. R. Civ. P. 9(b).[7]  Without reaching the issue of whether Plaintiff's negligent
14  misrepresentation claim must comply with Rule 9(b), the Court finds the complaint does not set
15  forth the "short and plain statement of the claim showing that the pleader is entitled to relief"
16  required by Fed. R. Civ. P. 8(a).

17      "Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a
18  misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing
19  it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance
20  of the truth and justifiable reliance thereon by the party to whom the misrepresentation was
21  directed, and (5) damages."  Fox v. Pollack, 181 Cal. App. 3d 954, 962 (Cal. Ct. App. 1986).
22  Plaintiff alleges in a conclusory manner that Defendants collectively made negligent
23  misrepresentations, but fails to identify what if any, misrepresentations EMC allegedly made.  In
24  fact, Plaintiff only specifically alleges YMS and Home Capital made misrepresentations about the
25  loan.  (Compl., ¶ 16.) ("Although YMS, Home Capital, and other persons made certain
26  representations regarding the LOAN, in actuality the LOAN was not as represented [.]")  Plaintiff

---

28  [7] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. of Civ. P. 9(b) (2009).

has therefore failed to give EMC "fair notice of what [her] claim is and the grounds on which it rests." Bell Atl., 550 U.S. at 555. The Court grants EMC's motion to dismiss Plaintiff's motion to dismiss the negligent misrepresentation claim without prejudice.

G.  Unjust Enrichment

The elements of an unjust enrichment claim are the "receipt of benefit and [the] unjust retention of the benefit at the expense of others." Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 726 (Cal. Ct. App. 2000). Here, Plaintiff has not pled that EMC received a benefit, or that it retained that benefit at Plaintiff's expense. The Court dismisses Plaintiff's unjust enrichment claim against EMC without prejudice.

II.  EMC'S Motion to Strike

A.  Legal Standard

EMC moves to strike Plaintiff's requests for punitive damages and attorney's fees. Under Rule 12(f), the Court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (2009). A Rule 12(f) motion helps to avoid the time and expense of litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004). However, Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted because they are often used to delay and because of the limited importance of the pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). Where a plaintiff seeks damages that are not recoverable as a matter of law, the Court may strike the prayer for relief. Wilderson v. Butler, 229 F.R.D 166, 172 (C.D. Cal. 2005).

B.  Analysis

1.  Request for Punitive Damages: Federal Claims

EMC argues Plaintiff's request for punitive damages fails to sufficiently allege the "oppression, fraud, or malice" required by California Civil Code Section 3294, the state statute which provides for the recovery of punitive damages.

Regardless of the merits of EMC's argument, Plaintiff may not recover punitive damages under her RESPA or TILA claims. RESPA provides for compensatory relief, costs, reasonable attorney's fees, and additional damages as the Court may allow, not to exceed $1,000. The statute does not allow recovery for punitive damages. See 12 U.S.C. § 2605(f) (2009). TILA similarly

prescribes its own remedies. The statute allows, *inter alia*, recovery for actual damages, costs, and reasonable attorney's fees, but does not allow punitive damages. See 15 U.S.C. § 1640(a) (2009). The Court therefore grants EMC's motion to strike Plaintiff's request for punitive damages with respect to her RESPA and TILA claims.

### 2. Request for Attorney's Fees: Federal Claims

EMC moves the Court to strike Plaintiff's request for attorney's fees. Specifically, EMC requests the Court strike Plaintiff's request for attorney's fees under TILA by raising arguments identical to those asserted in its motion to dismiss: first, EMC is not liable under TILA because it never had any ownership interest in the loan; and second, Plaintiff's claim for damages, including attorney's fees are time-barred by TILA' one year statute of limitations. The Court has declined to dismiss plaintiff's TILA claims on these bases, as explained in Section I(D) *supra*. Accordingly, the Court also denies EMC's motion to strike Plaintiff's request for attorney's fees under TILA.

EMC also moves the Court to strike Plaintiff's general request for attorney's fees. (Compl., p. 13.) Because Plaintiff has stated a claim under RESPA, 12 U.S.C. § 2605, and § 2605(f), which provides for reasonably attorney's fees, the Court denies the motion to strike Plaintiff's request for attorney fees with respect to her RESPA claim.

### 3. Motion to Strike Plaintiff's State Claim Prayers for Relief

The Court has found that Plaintiff has sufficiently stated claims under RESPA and TILA, but has dismissed Plaintiff's remaining claims for violation of Cal. Civ. Code § 1632, negligent misrepresentation, and unjust enrichment, which all arise under California law. Given the dismissal of Plaintiff's state law claims, EMC's motion to strike Plaintiff's requests for punitive damages and attorney's fees with respect to those claims is denied as moot.

### **CONCLUSION**

For the reasons stated herein, the Court DENIES EMC's motion to dismiss Plaintiff's RESPA and TILA claims, and DISMISSES without prejudice Plaintiff's claims for violation of Cal. Civ. Code § 1632 *et seq.*, negligent misrepresentation, and unjust enrichment. Plaintiff may file a first amended complaint curing the deficiencies described herein no later than **June 15, 2009**.

///
///
///

The Court GRANTS EMC's motion to strike Plaintiff's request for punitive damages from her TILA and RESPA claims. The Court DENIES EMC's motion to strike Plaintiff's request for attorney's fees from her TILA and RESPA claims, and DENIES AS MOOT EMC's motion to strike Plaintiff's prayers for relief from her state law claims.

**IT IS SO ORDERED.**

**DATED: May 22, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**